[Cite as *State v. Briggs*, 2023-Ohio-1931.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

DENNIS BRIGGS

    Appellant

C.A. Nos.    21CA0064-M
    21CA0065-M
    21CA0066-M
    21CA0067-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE Nos.    20CRB00612
    20CRB00675
    21CRB00027
    21CRB00427

DECISION AND JOURNAL ENTRY

Dated: June 12, 2023

---

CARR, Judge.

**{¶1}** Appellant, Dennis Briggs, appeals the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

**{¶2}** Over the course of 2020 and 2021, Briggs was charged on four separate occasions with illegal public camping in violation of Wadsworth Code of Ordinances Section 94.09 ("Section 94.09"). Briggs pleaded not guilty to the charges at arraignment. Briggs filed a motion to dismiss the charges on the basis that Section 94.09 was unconstitutional on a number of grounds. After allowing the parties to submit briefs, the trial court issued a journal entry denying the motion. The matter proceeded to a jury trial where Briggs elected to represent himself. The jury found Briggs

guilty on all four counts. The trial court imposed a 30-day jail sentence on each count and ordered those sentences to be served concurrently.

{¶3} On appeal, Briggs raises four assignments of error. This Court rearranges those assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR III

REVEREND BRIGGS'[] CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶4} In his third assignment of error, Briggs argues that his convictions were not supported by sufficient evidence. This Court disagrees.

{¶5} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6} Briggs was convicted of four counts of illegal public camping in violation of Section 94.09. Section 94.09(A) provides that "[e]xcept as may be permitted within municipal parks by the Service Director, or his or her designee, or as otherwise provided in division (C) of this section, it is unlawful to camp upon any public property owned by the city, including, without limitation, streets, sidewalks, easements, parks, parking lots, public grounds or public right-of-ways." The statute provides that the phrase "to camp" means "setting up, remaining in, or at

property for the purpose of: sleeping, making preparation to sleep, storing personal property, and/or performing cooking activities for habitation purposes." Section 94.09(B).

{¶7} Notably, Section 94.09(C) provides that Section 94.09(A) shall not apply to persons who:

(1) Have no alternative lodging available to them, and are otherwise homeless, and

(2) Have insufficient resources to secure alternative lodging, and

(3) Are unable to secure free services such as shelters within a reasonable proximity to the city, or hotel/motel vouchers which are or have been made available.

## Discussion

{¶8} Briggs argues that the State failed to demonstrate that the ordinance applied to him pursuant to Section 94.09(C). Briggs contends that he was a homeless man who did not have the means to secure alternative lodging. Briggs further contends that the free services available to him provided only temporary lodging options.

{¶9} At trial, the State presented evidence regarding four separate occasions where Briggs was charged with illegally camping on public grounds.

## October 12, 2020

{¶10} On October 12, 2020, Officer Lamielle of the Wadsworth Police Department found Briggs camping in an area between the sidewalk and the roadway on State Route 261. Briggs had set up his tent in a manner so that he could sleep and store his personal belongings. In Officer Lamielle's body camera video, Briggs can be heard acknowledging that his tent was located in a public right-of-way.[1]

---

[1] Briggs initially suggested that the public right-of-way was not covered by the ordinance.

{¶11} Officer Lamielle was familiar with Briggs because he had previously worked with an organization called Alternative Paths in order to provide Briggs with access to lodging.[2] Officer Lamielle testified that Alternative Paths offered Briggs a housing trailer in Seville that he could live in for free. Prior to the incident, the Wadsworth police had sent out a department-wide email explaining that Briggs had been offered housing options through Alternative Paths. Sergeant Patterson, who also responded to the scene, testified that the St. Vincent de Paul Society had offered to arrange for Briggs to stay at a local hotel for a week. Sergeant Patterson further explained that a representative from St. Vincent de Paul offered to assist Briggs in finding a landlord who would honor Briggs' HUD voucher. Briggs was given a three-day grace period to move his tent, but the last day of that grace-period was October 11, 2020. Briggs remained at that location on October 12, 2020. Sergeant Patterson testified that the alternative lodging options remained available to Briggs at the time he was charged.

### October 15, 2020

{¶12} Three days after Briggs was first charged on October 12, 2020, Officer Durbin of the Wadsworth police approached the same location and found that Briggs had continued to maintain his tent in the area between the sidewalk and the roadway on State Route 261. Briggs continued to use the tent to sleep and store personal items.

{¶13} The October 15, 2020 incident was not the first time that Officer Durbin had encountered Briggs. Several weeks earlier, on September 5, 2020, Officer Durbin had responded to a call that Briggs was behaving strangely in the parking lot of a Giant Eagle. It was at that time that Officer Durbin learned that Briggs was homeless. The Wadsworth police contacted the Haven

---

[2] Alternative Paths is a nonprofit that provides numerous services, including assisting individuals in finding housing.

of Rest, a homeless shelter in Akron, and arranged for Briggs to stay there. When Officer Durbin offered to drive Briggs to the shelter, however, Briggs declined the invitation on the basis that Akron was too dangerous.[3]

{¶14} When Officer Durbin approached Briggs' tent on October 15, 2020, she was wearing a body camera. In the body camera video, Briggs acknowledged that the Salvation Army and the St. Vincent de Paul Society had offered him lodging but he had refused those services. Officer Durbin testified that she informed Briggs that she could get him a voucher to stay at the Legacy Inn, but Briggs declined. Briggs insisted that he did not find nightly rates or the living conditions at the Legacy Inn to be acceptable.

<u>November 13, 2020</u>

{¶15} On November 13, 2020, Officer Seiler responded to a call that Briggs had set up camp at a similar location along State Route 261 in Wadsworth. When Officer Seiler arrived on the scene, he observed that Briggs had set up his tent in the public right-of-way. Officer Seiler informed Briggs of several housing options that were available that day. Briggs declined the services offered by the Salvation Army and the Haven of Rest. Officer Seiler explained that while the Salvation Army was offering a place to stay for only one night, the Haven of Rest provided a "semipermanent" option. Briggs told Officer Seiler that he was not interested. Sergeant Elchlinger, who also responded to the scene on November 13, 2020, testified that the police

---

[3] Officer Durbin was not one of the officers who encountered Briggs on October 12, 2020. Notably, however, Officer Durbin testified that she traveled to the location of Briggs' tent on October 8, 2020, and provided Briggs with a copy of Section 94.09. Officer Durbin explained the ordinance to Briggs and informed him that he had three days to remove his tent. As noted above, on October 12, 2020, Briggs remained at that location and he was charged with violating Section 94.09.

department had been "in touch with every agency in Medina County that [c]ould possibly help [Briggs][]" but Briggs was simply not willing to cooperate.

{¶16} After Briggs was placed under arrest on November 13, 2020, police discovered that Briggs was in possession of cashcards and food gift cards worth over three thousand dollars. During his exchange with the officers earlier that day, Briggs had indicated that he was unwilling to consider a budget hotel option for lodging unless the officers negotiated a better price for him.

January 24, 2021

{¶17} On January 24, 2021, Sergeant Elchlinger responded to a call that Briggs had set up camp at a different location on State Route 261 in Wadsworth. Briggs had once again set up his tent in the public right-of-way near the sidewalk along the side of the road. Sergeant Elchlinger observed that Briggs had been sleeping and storing property in his tent.

{¶18} Briggs initially expressed an openness to being relocated. Sergeant Elchlinger explained that the Haven of Rest was still an option, but Briggs was unwilling to go to Akron. At trial, Sergeant Elchlinger testified that Briggs was still in possession of his cash cards.[4] When Briggs asked to be taken to the Medina Motel, Officer Elchlinger contacted the establishment but learned that there were no vacancies. Officer Elchlinger made several additional calls and discovered that there was a room for Briggs at the Towne Motel in Medina. When this information was relayed to Briggs, however, Briggs indicated that he was unwilling to stay at that motel.

{¶19} In light of the aforementioned evidence presented by the State, Briggs' sufficiency challenge is without merit. While Briggs contends that there were no shelter services available to

---

[4] Sergeant Elchlinger testified that he encountered Briggs in the parking lot of the Beef O Brady's in Wadsworth several days prior to the January 24, 2021 incident. Given the weather that time of year, Sergeant Elchlinger discussed possible motel options that would allow Briggs to have a place to stay until the weather improved. Sergeant Elchlinger testified that Briggs had the funds necessary to stay at a motel for approximately six weeks.

him, the State presented evidence that Briggs was offered either shelter services or free lodging services on each of the four dates in question. Briggs refused those services. Furthermore, contrary to Briggs' assertion, some of the services would have given Briggs access to lodging for an extended period of time. With particular respect to the circumstances that gave rise to the charges on November 13, 2020, and January 24, 2021, the State demonstrated Briggs had the means to afford either budget hotels or local motels, but he was unwilling to pursue those options. This evidence, when construed in the light most favorable to the State, was sufficient to sustain Briggs' convictions for illegal public camping.

{¶20} Briggs' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

REVEREND BRIGGS['] CONVICTION WAS AGAINST THE MANIFEST WEIGH[T] OF THE EVIDENCE[.]

{¶21} In his fourth assignment of error, Briggs maintains that his convictions were against the weight of the evidence. This court disagrees.

{¶22} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶23} In support of his manifest weight challenge, Briggs argues that he called defense witnesses who successfully rebutted the police officers' testimony that Briggs was offered free lodging services by various social service organizations. Briggs points to the testimony of the representatives from Alternative Paths, the Salvation Army, and the St. Vincent de Paul Society in support of his position he never had access to alternative lodging.

{¶24} At trial, the Alternative Paths representative testified that she met with Briggs in jail and offered to provide transportation so that Briggs could be reconnected with relatives. Briggs declined that offer. The Alternative Paths representative did not have personal knowledge as to whether the organization had offered to provide Briggs with a trailer.

{¶25} The Salvation Army representative testified that, although she had never met Briggs prior to trial, she was aware that the Salvation Army had provided Briggs with housing vouchers on two separate occasions.

{¶26} The St. Vincent de Paul Society representative indicated that he counseled Briggs regarding how to work with the Medina Metro Housing Authority in order to obtain housing in a trailer park. As that process unfolded, however, Briggs insisted that the trailer was not a viable option because it could not pass inspection. The St. Vincent de Paul Society representative testified that he did not have personal knowledge as to why the trailer would not pass inspection.

{¶27} A careful review of the record reveals that this is not the exceptional case where the trier of fact lost its way. Simply put, the testimony from the aforementioned representatives did not serve to rebut the officers' testimony regarding the lodging options available to Briggs. Although the representatives had varying levels of familiarity with Briggs' case, there is no question that Alternative Paths, the Salvation Army, and the St. Vincent de Paul Society worked with Briggs in order to provide him with lodging options. To the extent that there were minor

discrepancies in the witnesses' testimony throughout the course of trial, we are mindful that the existence of contradictory testimony does not support a reversal on manifest weight grounds as the trier of fact "is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35. Accordingly, Briggs cannot prevail on his manifest weight challenge.

**{¶28}** Briggs' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING OFFICERS TO TESTIFY HEARSAY STATEMENTS IN TO EVIDENCE DENYING REVEREND BRIGGS HIS RIGHT TO CONFRONTATION. (SIC)

**{¶29}** Briggs maintains that the trial court permitted multiple officers to give hearsay testimony regarding the housing services that had been offered to Briggs. Briggs argues that allowing this testimony violated Evid.R. 802 as well as the Confrontation Clause contained in the Sixth Amendment to the United States Constitution.

**{¶30}** While an appellate court generally reviews hearsay challenges for an abuse of discretion, evidentiary rulings that implicate the Confrontation Clause are reviewed de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97.

**{¶31}** Evid.R. 801(C) defines "[h]earsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

{¶32} "The Confrontation Clause guarantees a criminal defendant the right 'to be confronted with the witnesses against him[ ]' * * * [and] bars the admission of 'testimonial' hearsay statements." *State v. Myers*, 9th Dist. Wayne No. 19AP0045, 2020-Ohio-6792, ¶ 13, quoting the Sixth Amendment to the U.S. Constitution and *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Only testimonial statements make a declarant a "witness" for purposes of the Confrontation Clause, and "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶33} As with challenges to hearsay, evidentiary rulings that implicate the Confrontation Clause are subject to a harmless-error analysis. *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 33.

{¶34} In support of his hearsay and Confrontation Clause arguments, Briggs focuses on the testimony of Officer Lamielle and Sergeant Patterson, the two officers who responded to the October 12, 2020 incident.[5]

{¶35} A review of the trial transcript reveals that Officer Lamielle was asked if he had any interactions with Briggs prior to the October 12, 2020 incident. Officer Lamielle responded in the affirmative and explained that he had assisted a social worker from Alternative Paths who was helping Briggs to find housing and access mental health services. When asked if Alternative Paths was offering housing to Briggs, Officer Lamielle again responded in the affirmative. The State then inquired as to what type of housing services were being offered. As Officer Lamielle began to answer, Briggs raised a hearsay objection. The trial court overruled the objection and

---

[5] Briggs cites only to the testimony of Officer Lamielle and Sergeant Patterson in support of his assignment of error. Accordingly, this Court will limit its analysis to the testimony of those two officers. App.R. 16(A)(7).

Officer Lamielle testified that Alternative Paths had offered Briggs a trailer that he could live in for free. Officer Lamielle testified that the housing offer from Alternative Paths was still available on October 12, 2020. Officer Lamielle further explained that, prior to the October 12, 2020 incident, the Wadsworth police had sent a department-wide email putting the officers on notice that there were lodging options available to Briggs.

{¶36} Like Officer Lamielle, Sergeant Patterson was asked if he knew whether housing services had been offered to Briggs prior to the October 12, 2020 incident. Over the objection of Briggs, Sergeant Patterson testified that he had been in contact with someone at the St. Vincent de Paul Society who had reached out to Briggs and offered him a week at the Legacy Inn. Sergeant Patterson further testified that the representative from St. Vincent de Paul was aware that Briggs had a HUD voucher and the representative had contracted Briggs on multiple occasions to assist Briggs in finding housing. With respect to the October 12, 2020 incident, Sergeant Patterson testified that he had received the police department email notifying him that there were lodging options available to Briggs through Alternative Paths. Sergeant Patterson gave additional testimony that he had authority through the police department to give Briggs a voucher that would have allowed him to stay at the Legacy Inn for a night.

{¶37} Under these circumstances, Briggs' arguments pertaining to inadmissible hearsay and the Confrontation Clause are without merit. As an initial matter, it is debatable as to whether portions of the aforementioned testimony were offered to prove the truth of the matter asserted or whether the testimony was simply intended to establish that both officers had a background with Briggs. Officer Lamielle's testimony in particular spoke to the fact that he was familiar with Briggs prior to October 12, 2020 because he had played a role in facilitating the relationship between Briggs and Alternative Paths. Nevertheless, even assuming arguendo that the testimony

of which Briggs complains constituted hearsay and implicated the Confrontation Clause, the record makes clear that any error in admitting the testimony was harmless. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. Here, both officers gave independent testimony indicating that they had been put on notice by the police department via email that Alternative Paths was willing to help Briggs secure free lodging at the time of the October 12, 2020 incident. Sergeant Patterson further testified that the police department had vouchers on hand that would have allowed Briggs to stay at the Legacy Inn for a night. The testimony of the officers was not inconsistent with the testimony offered by the various agency representatives. Under these circumstances, Briggs cannot prevail on his claim that the trial court's decision to admit the aforementioned testimony constituted reversible error.

{¶38} Briggs' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

WADSWORTH ORDINANCE []94.09 PROHIBIT[ING] CAMPING UPON PUBLIC PROPERTY IS UNCONSTITUTIONAL.

{¶39} In his second assignment of error, Briggs argues that Section 94.09 is unconstitutional. This Court disagrees.

{¶40} An appellate court reviews a constitutional challenge de novo. *State v. Honey*, 9th Dist. Medina No. 08CA0018-M, 2008-Ohio-4943, ¶ 4. "The Ohio Supreme Court has long held that there is a presumption that all legislative enactments are constitutional and that courts shall apply every presumption and relevant rule of construction to uphold a challenged statute or ordinance, if at all possible." *Akron v. Pouliot*, 9th Dist. Summit No. 25160, 2011-Ohio-2504, ¶ 7, citing *State v. Dorso*, 4 Ohio St.3d 60, 61 (1983).

Ex Post Facto

**{¶41}** Briggs' first argument is that Section 94.09 violates the Ex Post Facto Clause to the United States Constitution. Stressing that Section 94.09 was passed on October 6, 2020, Briggs contends that the ordinance should be deemed ex post facto with respect to him because he began camping in Wadsworth in September 2020, prior to the enactment of the ordinance.

**{¶42}** Article I, Section 10, Clause 1 of the United States Constitution provides that "[n]o State shall * * * pass any * * * ex post facto [l]aw[.]" It is well settled that "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, * * * is prohibited as ex post facto." *Beazell v. Ohio*, 269 U.S. 167, 169-170 (1925); *State v. Cook*, 83 Ohio St.3d 404, 414 (1998). This case does not involve a scenario where Briggs was convicted and punished for conduct that occurred prior to the law's enactment. The State presented evidence that, subsequent to the enactment of Section 94.09, the police explained the ordinance to Briggs and provided him with a three-day grace period to relocate. It was not until after the grace period had elapsed that Briggs was first charged with violating the ordinance. Accordingly, Briggs' ex post facto argument is not well taken.

Cruel and Unusual Punishment

**{¶43}** Briggs contends that Section 94.09 violates the proscription against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution because the ordinance criminalizes the status of being homeless.

**{¶44}** The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A law that creates a criminal offense based merely on an individual's status constitutes cruel and unusual punishment

for the purposes of the Eighth Amendment. *Robinson v. California*, 370 U.S. 660, 666-667 (1962). "However, the overt acts of an individual may constitute criminal behavior." *Akron v. Neal*, 9th Dist. Summit No. 11847, 1985 WL 10687, *1 (April 17, 1985), citing *Robinson* at 667.

{¶45}  Briggs directs this Court's attention to the Ninth Circuit's decision in *Martin v. Boise*, 902 F.3d 1031 (9th Cir.2018), where the court held that "the Eighth Amendment's prohibition on cruel and unusual punishment bars a city from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to." *Id*. at 1035, *amended and superseded,* 920 F.3d 584 (9th Cir.2019) (denying petitions for panel rehearing and for rehearing en banc).  In support of its admittedly "narrow" holding, the Ninth Circuit observed that "so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters], the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying, and sleeping in public." *Martin*, 920 F.3d at 617.  The court continued that, "as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter." *Id*.

{¶46}  Briggs' contention that Section 94.09 violates the Eighth Amendment is without merit.  Although Briggs asserts that the ordinance criminalizes the status of being homeless, the plain language of Section 94.09(A) provides that the ordinance is aimed at banning the overt act of camping on public property.  Section 94.09(B) defines the term "to camp" while Section 94.09(C) provides a safe harbor provision for homeless individuals who do not have access to lodging.  Furthermore, the Ninth Circuit's decision in *Martin* is factually distinguishable from the circumstances we confront in this case.  While the *Martin* decision contemplated a scenario where homeless individuals were without lodging options, *Martin*, 920 F.3d at 617, Section 94.09(C)

specifically provides that the ban on public camping does not apply to homeless individuals who do not have access to lodging and who are unable to secure free services. Finally, to the extent that Briggs asserts that there were no lodging options available to him, we reaffirm our prior analysis that Briggs' contention is not supported by the record. *See* Discussion of Assignments of Error III and IV, *supra*.

## Overbreadth and Vagueness

{¶47} Briggs' final argument in support of his second assignment of error is that Section 94.09 is unconstitutionally overbroad and vague. Briggs maintains that "[i]t is unclear what the [o]rdinance is trying to protect but preventing camping in all public property no matter what the property is used for is overly broad."

{¶48} Briggs' overbreadth challenge is predicated on his assertion that Section 94.09 restricts freedom of movement by criminalizing camping on all public property. "In order to demonstrate facial overbreadth, the party challenging the enactment must show that its potential application reaches a significant amount of protected activity." *Akron v. Rowland*, 67 Ohio St.3d 374, 387 (1993). As an initial matter, Section 94.09(A) does not criminalize camping on "all public property" as Briggs suggests. Section 94.09(A) allows for camping within municipal parks so long as the camper obtains a permit from the service director. Section 94.09(C) further sets forth the circumstances under which the camping ban would not be applied to individuals who are homeless. Moreover, Briggs has not identified a specific provision or set of provisions within the framework of Section 94.09 that restricts freedom of movement. App.R. 16(A)(7). Under these circumstances, Briggs has not demonstrated that Section 94.09 is overbroad.

{¶49} To the extent Briggs articulates a vagueness challenge in his merit brief, his chief contention appears to be that it is unclear what type of conduct would fall within the purview of

Section 94.09. "To withstand a claim of vagueness, a criminal statute must define a criminal offense with sufficient clarity for ordinary people to understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 238. Section 94.09(A) plainly states that it pertains to the act of camping on public areas that are owned by the city. Should there be any question as to what constitutes camping, Section 94.09(B) sets forth a common-sense, straightforward definition of the term, "to camp." Accordingly, this Court is not persuaded that the ordinance either lacks sufficient clarity or invites arbitrary enforcement.

{¶50} Briggs' second assignment of error is overruled.

III.

{¶51} Briggs' assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

THOMAS J. MORRIS, Director of Law, and BRADLEY PROUDFOOT, Assistant Diretor of Law, for Appellee.