[Cite as *State v. Howse*, 2024-Ohio-503.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 22CA011835 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER HOWSE | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 20CR103062 |

DECISION AND JOURNAL ENTRY

Dated: February 12, 2024

CARR, Presiding Judge.

{¶1}     Defendant-Appellant, Christopher Howse, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}     Howse used to be friends with J.B.'s boyfriend.  After the two men had a falling out, Howse threatened to shoot the house where J.B. and her boyfriend lived.  J.B. recalled that threat as she was driving home one evening and spotted Howse's vehicle on her street.  She attempted to drive away, but the vehicle began pursuing her.  As she reached the end of the street, gunshots rang out, and J.B. accelerated.  A brief chase ensued, at the conclusion of which J.B. saw Howse driving the vehicle that was chasing her.  She immediately reported the incident to 911 and spoke with the police later that same week.

{¶3}     Before she spoke with the police, J.B. and her boyfriend exchanged text messages with Howse and spoke with him on a video chat.  During their video chat, Howse once again

threatened to shoot their house and pointed a gun at them through the phone. J.B. and her boyfriend took pictures of Howse holding the gun and later provided those pictures to the police.

{¶4} Howse was indicted on each of the following counts: (1) felonious assault; (2) improperly discharging a firearm into a habitation; (3) discharging a firearm on a prohibited premises (i.e., a public road); (4) having a weapon under disability under R.C. 2923.13(A)(2); (5) having a weapon under disability under R.C. 2923.13(A)(3); and (6) improperly handling firearms in a motor vehicle. His indictment also included eleven firearm specifications and two specifications for being a repeat violent offender. The State later dismissed five of the firearm specifications.

{¶5} A jury found Howse guilty on each of his counts and remaining firearm specifications. The trial court then found him to be a repeat violent offender. The court merged several of his counts and specifications as allied offenses of similar import and sentenced him to a total of 28.5 to 31.5 years in prison.

{¶6} Howse now appeals from his convictions and raises five assignments of error for review. For ease of analysis, we rearrange and consolidate several of his assignments of error.

II.

## ASSIGNMENT OF ERROR III

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶7} In his third assignment of error, Howse argues his convictions for having a weapon under disability and his firearm specifications are based on insufficient evidence. Specifically, he claims the State failed to prove operability, and thus, that he possessed a firearm. We do not agree.

**{¶8}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶9}** A "firearm" is a "deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). The term "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." *Id.* "In determining whether a firearm is operable, the trier of fact examines the totality of the circumstances." *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 8. "Proof of the operability of a firearm can be established by circumstantial evidence * * *." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 8. *Accord* R.C. 2923.11(B)(2).

**{¶10}** J.B. testified that she met Howse through her boyfriend, who had known him for over ten years. The group spent time together on occasion and were familiar with each other's vehicles and residences. A few months before the shooting, a failed business venture cost Howse and J.B.'s boyfriend their friendship. According to J.B., Howse was angry with her boyfriend and threatened to shoot the house where he and J.B. were staying.

**{¶11}** J.B. was driving home one evening and was on her street when she spotted Howse's vehicle coming toward her. The vehicle passed her as it headed west. She did not see Howse at

that time but assumed he was the driver. She knew his mother lived just to the west, so she assumed he was going to see her. Because he had threatened to shoot their house, however, J.B. did not feel safe going home. She decided to pass her driveway and continue driving down the street. Before she reached the end of the street, she saw Howse's vehicle behind her. She testified the vehicle must have turned around to follow her. As the vehicle approached her from behind, J.B. heard gunshots.

{¶12} J.B. testified that, during this incident, she was driving her boyfriend's vehicle. The vehicle was distinct, and it was difficult to see inside because it had tinted windows. When she heard gunshots, J.B. accelerated, and Howse's vehicle gave chase. She testified the chase continued onto another road and reached speeds of over fifty miles per hour. When they reached a commercial area, J.B. decided to briefly slam on her brakes. Her actions caused the vehicle behind her to respond, and she was able to see Howse driving it as he "shot out of the driver's side of the car * * * and then swerved around [her]." She watched Howse accelerate and turn down a street in the distance. When asked if she was 100% sure Howse was the individual who followed her and shot at her vehicle, J.B. responded affirmatively.

{¶13} J.B., her boyfriend, and Howse exchanged text messages within days of the shooting. Howse also initiated several FaceTime calls between them. J.B. told Howse she had called the police and he would be going to jail for his actions. According to J.B., Howse pointed a gun at them through the phone screen and said "he was gonna shoot the house up and he didn't care whose kids were inside." J.B. and her boyfriend used a cell phone to take pictures of Howse as he was pointing a gun at the phone screen. The State introduced copies of the pictures at trial.

{¶14} A resident of the neighborhood where the shooting occurred testified that she was in her daughter's bedroom when she heard three gunshots. Her home faced west and abutted the

top of a t-intersection. The top street of the intersection ran north south while the bottom street ran west. The evidence showed J.B. was traveling eastbound on the bottom street (i.e., toward the resident's house) with Howse chasing her when gunshots erupted. As the resident listened to the gunshots, a bullet entered her daughter's bedroom and went through the closet. The police were unable to recover the bullet from its resting location, but the State introduced photographs of the damage caused to the resident's home by the bullet.

{¶15} Officer Alan Kubas reported to the resident's home and began documenting the scene. He testified that the police found three .40 caliber shell casings on the street outside. The casings were found at intervals to the west of the t-intersection. Two of the casings sustained damage and appeared to have been run over by a car.

{¶16} Howse challenges the sufficiency of the evidence underlying his convictions for having a weapon under disability and his firearm specifications. He argues that the State failed to prove any gun he held while videochatting with J.B. and her boyfriend was operable, and thus, a "firearm" for purposes of the Revised Code. *See* R.C. 2923.11(B)(1),(2). He notes that no gun was ever recovered in this matter, so the State was unable to conduct any operability tests. Implicit in his argument is the assumption that his weapons charges stem from the pictures J.B. and her boyfriend took while videochatting with him. His argument overlooks the remainder of the State's evidence regarding the shooting that occurred.

{¶17} Viewing the evidence in a light most favorable to the prosecution, we must conclude that the State presented sufficient evidence of operability. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. As previously noted, the State may prove operability through circumstantial evidence. *Clayton*, 2014-Ohio-2165, at ¶ 8; R.C. 2923.11(B)(2). This is true even in cases where the State is unable to locate the firearm involved in an offense. *See, e.g., Clayton*

at ¶ 7-14.  The State set forth evidence that Howse repeatedly fired a gun at J.B.  She testified that she saw Howse driving his car and heard gunshots immediately after he began pursuing her.  The police found shell casings on the street in that area and a bullet hole in a residence to the east of the eastbound pursuit that occurred.  Further, the jury heard J.B. testify that Howse repeatedly threatened to shoot at the home she shared with her boyfriend and pointed a gun at them while videochatting.  Based on the foregoing evidence, the jury reasonably could have concluded that Howse possessed an operable firearm.  Accordingly, his third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶18}  In his fourth assignment of error, Howse argues his convictions are against the manifest weight of the evidence.  We disagree.

{¶19}  A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶20}  Howse does not dispute that a shooting occurred in this matter.  Instead, he argues the jury lost its way when it chose to believe he was the shooter.  He notes that J.B. was the only

individual to identify him as the shooter. He further notes that the car he allegedly drove during the incident had tinted windows and did not belong to him. Howse argues J.B. was not a credible witness because she failed to report the shooting to the police and had a motive to lie. According to Howse, J.B. "[had] an incentive to lie due to her poor relationship with [him] through her [boyfriend]."

{¶21} The State set forth evidence that J.B. immediately called 911 in the wake of the shooting to report this incident. The only information she refused to divulge was her name. Additionally, she claimed her boyfriend was in the car with her during the shooting. J.B. agreed to speak with the police later that same week and provided them with the pictures the State introduced at trial (i.e., pictures taken during the video chat with Howse). At trial, J.B. explained that she was not forthcoming about her name or her boyfriend's presence when she called 911 because, at the time of the shooting, she was driving without a license. She explained that she was afraid she would suffer legal repercussions or lose her car if the police learned she was driving without one.

{¶22} J.B. acknowledged that the vehicle she saw Howse driving belonged to his girlfriend. It was her testimony, however, that Howse regularly used that vehicle. Indeed, when the police searched the vehicle after the shooting, they found several items belonging to Howse inside, including a credit card, a casino card, an envelope addressed to him from a law office, and a personal document. J.B. was adamant that she saw Howse driving the vehicle that chased her. Moreover, she provided the police with pictures of him pointing a gun at her and her boyfriend through the phone screen in the days after the shooting.

{¶23} Detective James Wise acted as the lead detective in this matter. He was familiar with Howse and confirmed that Howse was known to drive the vehicle J.B. said he was driving.

The detective confirmed that J.B. initially refused to identify herself to the police but still reported that Howse had shot a gun at her while driving. Detective Wise testified that the police were unable to arrest Howse for some time because he fled the state. Law enforcement officials arrested him in Arizona about eight months after the shooting.

{¶24} Having reviewed the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it chose to believe Howse was the individual who shot at J.B. *See Otten*, 33 Ohio App.3d at 340. J.B. was adamant that it was Howse who followed her vehicle and shot at her. To the extent she waited to provide the police with certain information, she explained the reasons behind her decision. The jury was in the best position to evaluate her credibility. *See State v. Singer*, 9th Dist. Medina No. 22CA0039-M, 2023-Ohio-2636, ¶ 22. Moreover, the jury heard evidence that Howse threatened to shoot the house where J.B. and her boyfriend were living, pointed a gun at them during a video chat following the shooting, and fled the state after the shooting. *See State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997) ("It is an established principle of law that '[f]light from justice * * * may be indicative of a consciousness of guilt.'"). Upon review, Howse has not shown this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten* at 340. As such, we reject his argument that his convictions are against the manifest weight of the evidence. His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

MR. HOWSE WAS DENIED DUE PROCESS AND DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL WHEN PRIVILEGED PHONE CALLS BETWEEN HIM AND HIS ATTORNEY WERE RECORDED FROM THE COUNTY JAIL, LISTENED TO BY THE STATE OF OHIO, AND THE CONTENTS TESTIFIED TO IN OPEN COURT.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ADMITTING TESTIMONY REGARDING JAIL CALLS WITHOUT PROPER AUTHENTICATION DEPRIVING MR. HOWSE OF HIS RIGHT TO A FAIR TRIAL.

{¶25} In his first and second assignments of error, Howse challenges the admission of testimony describing a portion of a jail call conversation he had with his attorney while incarcerated. He argues the admission of that testimony violated his due process rights as well as his Sixth Amendment right to counsel because any conversation he had with his counsel was privileged. Further, he argues the trial court erred by admitting that testimony without the jail call itself being authenticated and admitted into evidence. For the following reasons, we reject his arguments.

{¶26} At the end of Detective Wise's direct examination, the following exchange took place:

[PROSECUTOR]: Did you have an opportunity to monitor a call made by Defendant Howse on January 3rd, 2022, at 11:09 a.m.?

[DETECTIVE WISE]: Yes.

[PROSECUTOR]: And in that call, did you hear anything you noted of interest?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[DETECTIVE WISE]: Yes.

[PROSECUTOR]: What?

[DETECTIVE WISE]: Mr. Howse said – they were referring to the 9-1-1 calls. And he said something along the lines of "She thinks she said I'm unknown" and then corrected himself to "the person is unknown."

[PROSECUTOR]: Why did you find that to be of interest?

[DETECTIVE WISE]: I felt like that was an admission, kind of a slipup.

Although it was not clear from the prosecutor's questions or the detective's answers that Howse was speaking with his attorney during the referenced jail call, defense counsel made that point at the outset of cross-examination. Defense counsel specifically asked the detective whether he had listened to a phone call between Howse and his attorney.

{¶27} Howse never raised a constitutionality argument in the trial court based on a violation of his due process rights or Sixth Amendment right to counsel. He nevertheless claims that the one general objection he made during the foregoing exchange preserved both his constitutionality and authentication arguments for appeal. In the alternative, he has argued plain error with respect to his authentication argument. Even assuming he preserved his arguments for appeal, however, we must conclude that any error in the admission of the foregoing testimony was harmless beyond a reasonable doubt. *See State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus ("Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt."). *See also* Crim.R. 52(A) (providing that any errors not affecting a defendant's substantial rights "shall be disregarded").

{¶28} The jury heard J.B. testify that Howse was the person who shot at her. She recognized the vehicle he drove and saw him driving the car as he swerved around her. The police found shell casings in the area where the shooting occurred as well as bullet damage to a residence directly across from the area where J.B. said Howse shot at her. The jury heard J.B. testify that Howse repeatedly threatened to shoot the house where J.B. and her boyfriend lived. They also saw pictures of Howse pointing a gun at J.B. and her boyfriend through the phone during a video chat they had with him in the days after the shooting. Further, the jury heard testimony that Howse fled the state after the shooting and was apprehended months later in a different state. The State

produced overwhelming proof of Howse's guilt. *See Williams* at paragraph six of the syllabus. The detective's description of the phone call that occurred between Howse and his attorney was extremely brief and little context was given for the statement the detective perceived as "kind of a slip up" on Howse's part. Even if the trial court erred by admitting the detective's testimony about the jail call, the record reflects its admission was harmless beyond a reasonable doubt. *See id.* Accordingly, Howse's first and second assignments of error are overruled on that basis.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT'S ERRORS, WHEN TAKEN TOGETHER AND CONSIDERING THE CUMULATIVE ERROR DOCTRINE, DEPRIVED [MR. HOWSE] OF A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION DUE PROCESS CLAUSES.

{¶29} In his fifth assignment of error, Howse argues he was denied his right to a fair trial due to cumulative error. We reject his argument.

{¶30} Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial. *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. In the absence of multiple errors, the cumulative error doctrine does not apply. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. Likewise, if a defendant fails "'to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error.'" *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 68, quoting *In re F.B.*, 9th Dist. Summit Nos. 28960, 28985, 2019-Ohio-1738, ¶ 47.

{¶31} Howse has not shown that multiple errors occurred during his trial or that he was prejudiced as a result of any errors that occurred. Accordingly, he has not established cumulative error. *See Hunter* at ¶ 132; *Straughan* at ¶ 68. His fifth assignment of error is overruled.

III.

**{¶32}** Howse's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, J.
CONCURS.

FLAGG LANZINGER, J.
CONCURRING.

**{¶33}** Although I fully concur in the judgment of the Court, I am compelled to write separately regarding the first and second assignments of error.

**{¶34}** "Implicit within the meaning of Section 10, Article I, and the analogous protections of Section 16, Article I, is the right of a criminal defendant to consult privately with his attorney." *State v. Milligan*, 40 Ohio St.3d 341, 342 (1988). It is the responsibility of the State to ensure privacy for such communications. *Id.* at 343. Thus, "evidence obtained through the unauthorized interception of a private conversation between a criminal defendant and his attorney is subject to suppression * * *." *Id.* at 344.

**{¶35}** I am troubled by the State's practice of recording all jailhouse calls, regardless of whether a defendant needs to speak with his attorney by phone. In our fast-paced, electronic age, it is unrealistic to assume face-to-face meetings between jailed defendants and their attorneys will always be possible. Because criminal defendants have a constitutional right to consult privately with their attorneys, it is incumbent upon the State to aid in safeguarding that right. If the State fails to do so, evidence obtained in violation of a defendant's right may be challenged by way of a pretrial motion or civil actions outside the criminal proceedings.

**{¶36}** Howse did not file any pretrial motions seeking to suppress or exclude evidence the State obtained after recording a phone call between him and his attorney. Moreover, I agree with the majority's conclusion that any error in the admission of testimony related to that call was harmless beyond a reasonable doubt. Thus, in light of the foregoing circumstances, I concur in the judgment of the Court.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.