[Cite as *State v. Carter*, 2024-Ohio-5295.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30840 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| REGINALD CARTER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2021-09-3126 |

DECISION AND JOURNAL ENTRY

Dated: November 6, 2024

CARR, Judge.

{¶1} Defendant-Appellant Reginald Carter appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Following a drive-by shooting on July 23, 2021, which seriously injured two young men, an indictment was filed in September 2021, charging Carter with two counts of felonious assault and one count of having weapons while under disability. Two firearm specifications accompanied each of the felonious assault counts. The matter proceeded to a jury trial but ended in a mistrial. A second jury trial ensued. Carter was found guilty of the charges and was subsequently sentenced.

{¶3} Carter has appealed, raising four assignments of error for our review. Some of the assignments of error will be addressed out of sequence and will be consolidated with other assignments of error to facilitate our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. REGINALD CARTER.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING MR. REGINALD CARTER'S CRIM[.R.] 29 MOTION FOR ACQUITTAL.

**{¶4}** Carter argues in his first assignment of error that his convictions for felonious assault and having a weapon while under disability are based on insufficient evidence. He asserts in his fourth assignment of error that the trial court erred in denying his Crim.R. 29 motion.

**{¶5}** Carter argues that the State did not demonstrate that Carter fired the gun or even possessed a gun.

**{¶6}** Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶7}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8}   R.C. 2903.11(A)(2) states that "[n]o person shall knowingly …[c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."  A firearm constitutes a deadly weapon.  *See* R.C. 2903.11(E)(1); R.C. 2923.11(A); R.C. 2923.11(B).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶9}   R.C. 2923.13(A)(3) indicates that:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if …[t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶10}   Further, with respect to the two counts of felonious assault, the jury was instructed on complicity as an aider and abettor.  R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall … [a]id or abet another in committing the offense[.]"  "A charge of complicity may be stated in terms of this section, or in terms of the principal offense."  R.C. 2923.03(F).  "A conviction based on complicity by aiding and abetting under R.C. 2923.03(A)(2) must be based on evidence showing that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.  This intent may be inferred from the surrounding circumstances."  (Internal quotations and citations

omitted.) *State v. Moore*, 2020-Ohio-3708, ¶ 12 (9th Dist.). Accordingly, if the evidence supported that Carter was complicit in committing felonious assault, he could have been found guilty even if he was not the shooter. *See State v. Ross*, 2023-Ohio-1185, ¶ 23 (9th Dist.).

{¶11} On July 23, 2021, in Springfield Township, a little before 8:00 pm, 18-year-olds M.R. and S.W. went to go check on a younger neighborhood child who had been bullied earlier in the day as the two had concerns that the child might be assaulted again. M.R. and S.W. encountered a group of children, some of whom were congregated on a porch. M.R. described a lot of yelling among the children but no physical altercation. Then one of the boys on the porch said, "Wait right here." M.R. then had a feeling something bad was going to happen.

{¶12} Shortly after, a car described as a black Cadillac with tinted windows pulled up. Surveillance video would confirm that a black sedan was in the area of the crime scene around the time of the shooting. M.R. testified that the car "pulled up and two grown men jumped out and they started shooting." M.R. described the driver as a bald African American man with a bushy beard. M.R. was unable to describe the passenger. M.R. testified that the driver had a handgun and then M.R. saw a flash. M.R. fell to the ground and could not feel his legs anymore. M.R. saw people running and screaming and observed the car drive away at a high rate of speed.

{¶13} M.R. was shot in his hip. He required surgery and had a lengthy hospital stay. At trial, M.R. identified Carter as the man in the driver's seat that pointed a gun at him.

{¶14} S.W. indicated that the car was a newer four-door black Cadillac. It pulled up and then the shooting started. S.W. remembered seeing two men and two guns but did not see anyone fire when he got shot. At trial, S.W. identified the driver as Carter. S.W. expressed certainty that Carter was the driver. S.W. had difficulty at trial remembering what the passenger looked like, but stated he was African American and at least 20. S.W. did not remember the driver getting out

of the vehicle but recalled seeing the top half of the other man, who pointed his gun at S.W. When S.W. saw the guns, he turned and ran. S.W. was shot from behind in the left shoulder. S.W. ran to M.R.'s house and was ultimately transported to a hospital.

{¶15} When S.W. first talked to the police, he told them that the shooter came from the rear of the vehicle, was approximately 18 to 25 years old, was wearing a gray hoodie, and had light facial hair. He also told police that he could not remember whether the shooter was on the driver or passenger side of the vehicle but did say the driver was not the shooter.

{¶16} At the crime scene, fifteen shell casings were recovered and sent for analysis. It was determined that all of them were fired from a single gun. No DNA or fingerprints were found. The gun was never recovered. Police were given the nickname "Dunk" or "Dump" as being possibly involved and were also provided with an anonymous tip which provided them with Carter's name. When police looked up Carter's driver's license information, it was discovered that the photo resembled the description provided by S.W. M.R. identified Carter with 95% certainty in a photo array as the person who shot him. S.W. identified Carter as a suspect in a photo array with 100% certainty.

{¶17} Police also learned that a 2017 black Cadillac was registered to Carter. While investigating, police came to believe that Carter had ties to Tika Phelps who owned the house near where the shooting took place and to a child who the victims identified as being on the porch of the house before the shooting. Ultimately, police located the Cadillac registered to Carter and obtained a search warrant for the infotainment system in the vehicle. The report from the infotainment system listed Ms. Phelps' name and phone number and the child's name.

{¶18} Cell phone data was also analyzed during the investigation. There was testimony that a cell phone with the number that Carter used was in downtown Akron around 5:00 pm on the

day of the shooting. At 7:45 pm, that same phone utilized a cell tower that was 639 yards from the crime scene. Police received a shots fired call at 7:48 pm. At 7:50 pm, the same cell phone utilized a different cell tower that was still within the area of the crime scene. However, by 8:08 pm, the cell phone was several miles away from the crime scene.

{¶19} Viewing the evidence in a light most favorable to the State, we conclude that Carter has not demonstrated that the trial court erred in denying his Crim.R. 29 motion or that his convictions were based on insufficient evidence. There was ample evidence connecting Carter to the crimes and crime scene. Both victims identified Carter as the driver of the vehicle and S.W. testified that both men had guns. Both M.R. and S.W. testified that the driver, Carter, had a gun. While not all of the evidence pointed to Carter being the shooter, there was evidence that Carter did fire the shots. During the photo array, M.R. identified Carter as the man who shot him and, at trial, testified that the driver had a gun, M.R. saw a flash, and he fell. Moreover, as discussed above, the jury was instructed as to complicity with respect to the felonious assault charges, so it was not essential that Carter was demonstrated to be the shooter. Further, even if Carter did not fire the gun, there was substantial evidence that he had a gun; he did not have to fire it to be found guilty of violating R.C. 2923.13(A)(3). *See* R.C. 2923.13(A)(3).

{¶20} Carter's first and fourth assignments of error are overruled.

**ASSIGNMENT OF ERROR II**

MR. REGINALD CARTER'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION (CLAUSE XIV, SECTION 1, UNITED STATES CONSTITUTION).

{¶21} Carter argues in his second assignment of error that his convictions are against the manifest weight of the evidence.

{¶22} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.* We are mindful that "the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Darr*, 2018-Ohio-2548, ¶ 32 (9th Dist.). This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible. *See State v. Crowe*, 2005-Ohio-4082, ¶ 22 (9th Dist.).

{¶23} Carter makes a fairly limited argument in support of this assignment of error. In so doing, he points to some of the discrepancies between the two victims' testimonies about certain details including the identity and location of the shooter. Carter also argues that, given the location of his home, the cell phone data was not reliable in placing him at the crime scene, as he could have been at home.

{¶24} This Court has thoroughly and independently reviewed the record, and we cannot say that Carter has demonstrated that the jury lost its way in finding him guilty of the challenged charges. In reaching this conclusion, we remain mindful that the jury was in the best position to make credibility determinations and that the jury was also instructed as to complicity with respect to the two felonious assault charges. *See State v. Yost*, 2024-Ohio-545, ¶ 26 (9th Dist.). Further, even if the cell phone data was unreliable in placing Carter at the crime scene, the testimony of

both victims placed Carter there.  In summary, Carter has not demonstrated that his convictions are against the manifest weight of the evidence.

{¶25}  Carter's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE STATE OF OHIO'S EXHIBITS OVER MR. REGINALD CARTER'S OBJECTION.

{¶26}  Carter argues in his third assignment of error that the trial court erred in admitting certain exhibits over his objection.  Specifically, Carter argues that M.R.'s medical records were not admissible due to the absence of testimony by a records custodian.  In addition, he asserts that certain video evidence was inadmissible as it violated his rights under the Confrontation Clause and because it was not the body camera video of the officer who presented it at trial.

{¶27}  Generally, "a trial court has broad discretion in the admission or exclusion of evidence and this Court will not disturb a trial court's ruling on the admission of evidence absent an abuse of discretion and material prejudice to the defendant."  (Internal quotations and citations omitted.)  *State v. Suggs*, 2024-Ohio-1961, ¶ 33 (9th Dist.); *see also State v. Wooden*, 2015-Ohio-2633, ¶ 10 (9th Dist.).  However, "evidentiary rulings that implicate the Confrontation Clause are reviewed de novo."  *State v. Briggs*, 2023-Ohio-1931, ¶ 30 (9th Dist.).  Nonetheless, such rulings are likewise subject to a harmless-error analysis.  *See id.* at ¶ 33.

{¶28}  With respect to M.R.'s medical records, even if we were to assume that they were inadmissible, *but see State v. Wooden*, 2015-Ohio-2633, ¶ 10-11 (9th Dist.), the record does not support that Carter was prejudiced by their admission.  There was testimony about M.R.'s injuries, video of M.R. prior to being transported to the hospital, and a fairly graphic photograph of M.R. in a hospital bed presented at trial and also admitted into evidence.  On appeal, Carter asserts that

the medical records were prejudicial because they showed the extent of M.R.'s injuries. However, given the testimony, photograph, and video evidence presented, we fail to see how the medical records were anything other than cumulative in light of Carter's argument.

{¶29} With respect to Carter's objection as to two video clips played for the jury and admitted into evidence, Carter asserts that they were prejudicial because a 6-year-old in the video identified the shooter as "Dunk[.]" In reviewing the clips several times, this Court could not hear the child making the aforementioned identification. It therefore seems very unlikely the jury was able to discern it as the jury did not even know to look for it. Thus, it is difficult to understand how Carter was prejudiced.

{¶30} As to Carter's assertion that the body camera footage was introduced through an officer who was not wearing that camera, Carter did not make this argument in the trial court and has not argued plain error on appeal. *See State v. Chapman*, 2018-Ohio-1142, ¶ 23 (9th Dist.). Moreover, the person through whom the video was introduced witnessed the events displayed and Carter has not explained why this person thus could not authenticate the video. *See* Evid.R. 901(A), (B)(1).

{¶31} Accordingly, Carter's third assignment of error is overruled.

III.

{¶32} Carter's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

KRISTOPHER IMMEL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.