[Cite as *State v. Taylor*, 2025-Ohio-5359.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 2024CA0079-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JACKIE L. TAYLOR | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 22CR0353 |

DECISION AND JOURNAL ENTRY

Dated: December 1, 2025

CARR, Judge.

{¶1}  Defendant-Appellant Jackie L. Taylor appeals the judgment of the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}  On February 1, 2019, the U.S. Postal Inspection Service was intercepting packages that were suspected of containing narcotics.  One of those packages that was intercepted was addressed to Taylor's mother.  Prior to Taylor's mother's arrival at the post office to pick up the package, several law enforcement officers were called in and a narcotics dog alerted on the package.

{¶3}  When Taylor's mother was confronted with the package and was asked about it, she agreed to have the package opened, and it was discovered to contain methamphetamine. Taylor's mother then advised law enforcement that she was picking it up for Taylor.  Taylor's mother agreed to go with law enforcement back to her house so that Taylor could be interviewed.

{¶4} Taylor ultimately admitted purchasing the methamphetamine on the dark web and provided authorities with the information needed to access his account.

{¶5} In April 2022, an indictment was filed charging Taylor with one count of aggravated possession of drugs, a felony of the second degree. Taylor's counsel at the time filed a motion to dismiss in August 2022. On September 9, 2022, the trial court issued an entry denying the motion to dismiss for failure to prosecute. The entry noted that Taylor was not present and there was an active warrant for his arrest, but he was represented by counsel.

{¶6} In December 2023, Taylor's counsel filed a motion for leave to file a motion to suppress; the motion was subsequently granted. A motion to suppress was filed in late January 2024, and a hearing was scheduled.

{¶7} Also in January 2024, Taylor's counsel filed a motion to reinstate the motion to dismiss, and an additional motion to dismiss. A hearing was then held on both the motion to dismiss and the motion to suppress. The trial court denied the motion to dismiss at the hearing. Taylor's counsel then requested findings of fact and conclusions of law, which the trial court denied. Nonetheless, the trial court issued a written entry in late February 2024 denying both the motion to suppress and the motion to dismiss.

{¶8} Ultimately, the matter proceeded to a jury trial. The jury found Taylor guilty of complicity in the commission of aggravated possession of drugs and Taylor was sentenced accordingly.

{¶9} Taylor has appealed, raising five assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT MADE A REVERSIBLE ERROR BY DENYING MR. TAYLOR'S MOTION TO DISMISS, THEREBY VIOLATING THE DUE

PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AS GUARANTEED UNDER THE FIFTH AND FOURTEENTH AMENDMENTS, AS WELL AS THE SPEEDY TRIAL CLAUSE OF THE SIXTH AMENDMENT.

{¶10}   Taylor argues in his first assignment of error that the trial court erred in denying his 2024 motion to dismiss.  While Taylor mentions law concerning the constitutional right to a speedy trial under the Sixth Amendment, his analysis focuses on preindictment delay and the right to due process.  Our discussion will be accordingly limited.

{¶11}   "In reviewing a decision on a motion to dismiss for pre-indictment delay, we accord deference to the trial court's findings of fact but engage in a de novo review of the trial court's application of those facts to the law."  (Internal quotations and citations omitted.)  *State v. Purk*, 2017-Ohio-7381, ¶ 7 (9th Dist.).   "[W]hen unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection."  *State v. Jones*, 2016-Ohio-5105, ¶ 11.  "[P]reindictment delay violates due process only when it is unjustifiable and causes actual prejudice: 'An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law' under the United States and Ohio Constitutions."  *Id.* at ¶ 12, quoting *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus.  First, "the defendant [must] produce evidence demonstrating that the delay has caused actual prejudice to his defense.  Then, after the defendant has established actual prejudice, the [S]tate must produce evidence of a justifiable reason for the delay."  (Internal quotations and citations omitted.)  *Purk* at ¶ 8.  If the defendant fails to produce evidence of actual prejudice, the trial court's inquiry ends.  *Id.*  In the due process context, there is no presumption of prejudice irrespective of the length of time of the preindictment delay.  *Id.* at ¶ 9.

A determination of actual prejudice involves a delicate judgment and a case-by-case consideration of the particular circumstances. A court must consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay. Th[e Supreme Court] has suggested that speculative prejudice does not satisfy the defendant's burden.

(Internal quotations and citations omitted.) *Jones* at ¶ 20. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.* at ¶ 28.

{¶12} The incident that is the subject of the charge at issue occurred on February 1, 2019; however, the indictment was not filed until April 26, 2022. Here, there is no need to examine the circumstances of the delay as we conclude that Taylor has not demonstrated that the trial court erred in concluding that Taylor had failed to demonstrate actual prejudice.

{¶13} At the motion hearing, Taylor's counsel alleged that the delay led to several items of evidence not being available, including surveillance video from the post office, body camera videos of different officers, interviews of Taylor and Taylor's mother, who was a co-defendant, and the testimony of Taylor's first counsel, whom Taylor's counsel alleged was unavailable to testify. Taylor's counsel did not explain how that evidence "would minimize or eliminate the impact of the [S]tate's evidence and bolster the defense." *Id.*

{¶14} The State maintained that there was no video surveillance or any recorded interviews. The State indicated that no evidence or witnesses disappeared. The State then put on the testimony of Brian Green, who at the time, was a postal inspector with the United States Postal Inspection Service and a federal law enforcement officer who was involved in the investigation on February 1, 2019. Inspector Green testified that it was his understanding that there was not any evidence that had disappeared or become unavailable. Inspector Green maintained that there was no surveillance video, audio recordings, or recorded interviews. Inspector Green, however, did

not know whether another officer had a body camera. Inspector Green asserted that there were no surveillance cameras at the post office, and that, if surveillance video had been available, he would have attempted to recover the video.

{¶15} Given the foregoing, and in light of the argument presented on appeal, Taylor has not demonstrated that the trial court erred in concluding that he did not demonstrate actual prejudice. First, it is unclear whether any evidence actually became unavailable due to the preindictment delay. Second, even if we were to assume that some item of evidence did become unavailable, Taylor has not explained how the absence of that evidence meets the actual prejudice standard. Accordingly, Taylor has failed to show that the trial court erred in denying the motion to dismiss.

{¶16} Taylor's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY DENYING MR. TAYLOR'S MOTION TO SUPPRESS, VIOLATING HIS FOURTH AND FIFTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION.

{¶17} Taylor asserts in his second assignment of error that the trial court erred in denying his motion to suppress. Specifically, Taylor maintains that his statement was coerced and that law enforcement failed to comply with *Miranda v. Arizona*, 384 U.S. 436 (1966).

{¶18} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then

independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

{¶19} Here, Taylor essentially challenges the trial court's factual findings. At the suppression hearing, Inspector Green and Taylor presented different versions of what happened when Inspector Green and other law enforcement officers arrived at Taylor's mother's house. Inspector Green testified that Taylor's mother brought Inspector Green and the other officers inside the house, and they identified themselves. Inspector Green showed his credentials. Inspector Green told Taylor that Taylor's mother had just picked up a package containing methamphetamine, which she said was his, and that Inspector Green would like Taylor's cooperation. Before Inspector Green allowed Taylor to respond, Inspector Green read Taylor his *Miranda* rights. Then he presented Taylor with a form with the *Miranda* rights. Taylor read the form and signed it. Only then did law enforcement question Taylor. Inspector Green denied telling Taylor that if he did not cooperate that Taylor's mother would be going to prison and denied informing Taylor of the length of the prison sentence Taylor was facing if he did not cooperate. Inspector Green testified that he "always advise[s] that [he] cannot make any promises, no threats, no coercion. My career is not worth that." Inspector Green indicated that Taylor voluntarily cooperated and provided a statement.

{¶20} Taylor testified that it was overwhelming and intimidating having six or seven officers in the house including the FBI and DEA. Taylor maintained that he was interviewed at 4:00 pm, before he was read the *Miranda* warnings or signed the form. Taylor stated that if he did not help law enforcement, he was told that Taylor's mother would go to prison that day. He was also told that he would not go to jail either and nothing would happen if he gave authorities the

information they wanted. Taylor indicated that Taylor's mother was crying and screaming. He described the scene as very upsetting and that he was willing to do anything to keep Taylor's mother out of prison. Taylor asserted that the drugs were Taylor's mother's and that he lied in his statement. Taylor also maintained that the account information for purchasing the drugs he provided to authorities was not his.

{¶21} In the entry ruling on the motion to suppress, the trial court specifically stated that "[t]he Court, as the trier of fact, finds that [Inspector] Green's testimony was credible and that Taylor's testimony was not credible."

{¶22} On appeal Taylor relies solely on his own testimony to support his contention that his statements to law enforcement were coerced. However, the trial court did not find Taylor's testimony credible and instead believed Inspector Green's testimony. Inspector Green denied threatening Taylor or making any promises to obtain his cooperation.

{¶23} With respect to *Miranda*, Taylor argues *Miranda* was not complied with because he was provided with the warnings after he provided law enforcement with his statement. Again, however, Taylor's argument is only supported by his own testimony, which the trial court explicitly did not find credible. Inspector Green testified that he provided Taylor with the warnings prior to questioning. The trial court found Inspector Green credible.

{¶24} Here, there was testimony to support that Taylor was provided with the *Miranda* warnings prior to questioning and that he was not threatened or promised anything in exchange for his cooperation. The trial court found that evidence to be credible. We are mindful that the trial court is in the best position to make credibility determinations. *Burnside*, 2003-Ohio-5372, at ¶ 8. We accept the trial court's factual findings as they are supported by competent, credible evidence. *Id.*

{¶25}  Taylor has not demonstrated that the trial court erred in denying his motion to suppress.  Taylor's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE WITHOUT CONSIDERING THE MERITS OF THE MOTION, SOLELY ON THE GROUNDS THAT THE DEFENDANT WAS NOT PRESENT AT THE HEARING.

{¶26}  Taylor argues in his third assignment of error that the trial court erred in dismissing his 2022 motion to dismiss for failure to prosecute without addressing the merits.  Specifically, Taylor asserts that the trial court erred "when it summarily dismissed [] Taylor's motion to dismiss [based] solely on the fact that [] Taylor was not present at the hearing."

{¶27}  We conclude that Taylor's argument lacks merit as Taylor has not demonstrated that the trial court dismissed his motion solely because Taylor was not present at the hearing.

{¶28}  First, the trial court's entry does not state that it dismissed the motion because Taylor was not present.  The entry provides:

> This matter was set for a hearing on the defendant's motion to dismiss on September 9, 2022, before the [trial court].  The State of Ohio was represented by [counsel].  The defendant was not present in court but was represented by his counsel[.]  The defendant currently has an active warrant in this matter.

> The Court dismissed the motion for failure to prosecute.

{¶29}  Thus, the trial court did not state that is dismissed the motion for failure to prosecute *because* Taylor was not present.  It is possible that Taylor's counsel opted not to go forward with the motion or acquiesced in the trial court's decision.  The record reflects that the hearing was transcribed; however, a transcript of that hearing is not in the record.  The transcript of the hearing could help clarify the basis for the dismissal of the motion.  "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has

nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *State v. Peeler*, 2023-Ohio-1315, ¶ 5 (9th Dist.), quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). In the absence of a transcript of the motion hearing, we are unable to fully review the trial court's decision. *See Peeler* at ¶ 5-6.

{¶30} Moreover, even if the trial court had improperly dismissed that motion, we cannot say that the record supports that Taylor was prejudiced by the dismissal given that Taylor later sought to reinstate the motion to dismiss and filed an additional motion to dismiss. While the trial court did not specifically rule on the motion to reinstate the motion to dismiss, Taylor has not pointed to anything that indicates that the trial court failed to consider any and all arguments presented; the trial court heard arguments on Taylor's 2024 motion to dismiss and then denied it. Accordingly, we cannot say that the record establishes that Taylor was prejudiced.

{¶31} Given the foregoing, Taylor has not demonstrated the trial court committed reversible error in denying the 2022 motion to dismiss. Taylor's third assignment of error is overruled.

<b><u>ASSIGNMENT OF ERROR IV</u></b>

> MR. TAYLOR'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTION. A MANIFEST WEIGHT CHALLENGE QUESTIONS WHETHER THE STATE MET ITS BURDEN OF PERSUASION.

{¶32} Taylor argues in his fourth assignment of error that the guilty verdict is against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*. "We are mindful that 'the jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Carter*, 2024-Ohio-5295, ¶ 22 (9th Dist.), quoting *State v. Darr*, 2018-Ohio-2548, ¶ 32 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible." *Carter* at ¶ 22.

{¶33} The jury found Taylor guilty of complicity in the commission of aggravated possession of drugs, with the drug at issue being methamphetamine and the amount being equal to or in excess of 5 times the bulk amount but less than 50 times the bulk amount. R.C. 2923.03(A)(1)-(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [s]olicit or procure another to commit the offense; [or a]id or abet another in committing the offense[.]" R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶34} Inspector Green also testified at trial, along with several other witnesses. As discussed above, Inspector Green is a postal inspector and federal law enforcement agent with the United States Postal Inspection Service. At the time the package at issue was intercepted, the

United States Postal Inspection Service was conducting an interdiction and looking for parcels that might contain drugs. Inspector Green indicated that packages with drugs often come from California, Arizona, and Texas. In addition, they are often paid for with cryptocurrency. The package at issue came from California and was paid for with cryptocurrency. It was addressed to Taylor's mother.

{¶35} When the Postal Inspection Service was alerted by the Medina Post Office that a female wanted to pick up the package, Inspector Green and others went there. A drug dog was brought in and the dog alerted to the package. The package was then released to Taylor's mother. Taylor's mother was stopped after she picked up the package.

{¶36} Taylor's mother was brought into a room in the back, read her rights, and questioned. Taylor's mother consented to a search of the package. She told authorities that the package contained methamphetamine that she was picking up for her son, Taylor. Taylor's mother indicated that Taylor purchased it on the dark web using her computer. What was believed to be methamphetamine was found in the package. It was sent to the lab for testing and confirmed to be 29.52 grams of methamphetamine.

{¶37} Taylor's mother agreed to go back to her house with law enforcement so they could talk to Taylor. When they arrived at the residence, Taylor was *Mirandized,* and the situation was explained to him. Taylor signed a waiver of rights and agreed to cooperate. Taylor then admitted that he purchased the methamphetamine on the dark web and confirmed that he had previously placed orders for methamphetamine. Taylor indicated that Taylor's mother did not know what was in the parcel. Taylor also signed paperwork allowing authorities to search his internet accounts and provided them with his username and password for the account so that authorities could assume his internet identity to locate the individuals who sold Taylor the drugs. Inspector Green

was able to use the username and password to access the account and view Taylor's order history. Inspector Green denied telling Taylor that Taylor's mother would go to prison if Taylor did not cooperate.

{¶38} A couple of the forms appear to possibly include misspellings of Taylor's first and last names. While it is unclear how Taylor's last name ended up being misspelled, Taylor's mother explained during her testimony that Taylor sometimes went by Jack, even though his name is Jackie, thus explaining what could otherwise be viewed as a misspelling of Taylor's first name.

{¶39} Daniel Senchesak, another United States Postal Inspector also testified about the events of February 1, 2019. Inspector Senchesak assisted Inspector Green in the investigation. Inspector Senchesak confirmed that Taylor's mother told authorities that she was picking the package up for her son Taylor and that she thought there were narcotics in the package and that the drugs may be methamphetamine. Inspector Senchesak also indicated that Taylor's mother gave consent to have the package opened and agreed to allow herself to be escorted back to her house so that authorities could speak with Taylor. Once at the house, Inspector Senchesak had to step outside, and when he returned, he observed Taylor filling out and signing a form turning over his dark web account to Inspector Green. Inspector Senchesak left shortly thereafter. He did not witness Inspector Green accessing the dark web and was not around during Taylor's statements to Inspector Green.

{¶40} Daniel Warner with City of Medina Police Department was also involved in the February 1, 2019 investigation as a member of the Medina County Drug Task Force. Officer Warner was present to assist the postal inspectors and serve as a liaison. Officer Warner confirmed much of what Inspectors Green and Senchesak testified to. He confirmed that a drug dog alerted to the package and that Taylor's mother came to the post office to pick up the package. Taylor's

mother acknowledged the package contained narcotics that were ordered by Taylor and consented to a search of the package. Officer Warner also testified that when authorities went to Taylor's mother's house, Taylor admitted to ordering the drugs, gave some details about how they were ordered, and consented to a search of his dark web account. Officer Warner observed Taylor sign the various forms but was not present when Inspector Green accessed the dark web using Taylor's account.

{¶41} Taylor's mother also testified. She initially tried to invoke her Fifth Amendment right but was told that she could not because she already pled guilty to possessing the methamphetamine. Taylor's mother testified that on February 1, 2019, she received a call to come pick up a package from the post office. She went to pick it up, signed for it, and was then detained. Taylor's mother indicated that she was taken to a room and asked whether she would give permission to open the package. She agreed to do so. She testified that she did not know what was in the package and did not know who could have ordered the package. Taylor's mother denied that she told authorities that her son ordered the package and instead said that maybe somebody could have ordered the package from her home and maybe her sons knew something. Taylor's mother maintained that the authorities told her prior to opening the package they believed there was methamphetamine in the parcel. Taylor's mother maintained that she only pled guilty because she did not want to go to prison. Taylor's mother asserted that she was afraid and was handcuffed on the ride back to her house. Taylor's mother denied being read her rights. Taylor's mother testified that Taylor told law enforcement that he did not know anything about the package. Taylor's mother asserted that Taylor was told that Taylor's mother would go to prison if Taylor did not provide law enforcement with information and that was why he completed the forms. Taylor's mother did not remember Taylor admitting that he ordered the drugs.

{¶42} While Taylor asserts various discrepancies in the testimony and evidence undermine the credibility of the State's witnesses, Taylor has not demonstrated on appeal that his conviction was against the manifest weight of the evidence. "[W]e remain mindful that the jury was in the best position to make credibility determinations[.]" *Carter*, 2024-Ohio-5295, at ¶ 24 (9th Dist.). The jury heard evidence that Taylor himself admitted to ordering the methamphetamine, provided authorities with the username and password to access the account, and that authorities were able to access the account with that information. In addition, the jury heard that Taylor's mother went to the post office to pick up the drugs knowing what was in the package and later pleaded guilty. While Taylor's mother testified differently than the law enforcement witnesses, the jury was not required to believe her. Further, the jury could have reasonably found any errors in the manner in which the forms were completed to be inconsequential in light of the other evidence presented. Taylor has not shown that the jury lost its way in finding him guilty.

{¶43} Taylor's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE CUMULATIVE EFFECT OF ERRORS DEPRIVED MR. TAYLOR OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

{¶44} Taylor argues in his fifth assignment of error that he was deprived of a fair trial due to cumulative error.

{¶45} "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Howse*, 2024-Ohio-503, ¶ 30 (9th Dist.). "In the absence of multiple errors, the cumulative error doctrine does not apply." *Id.* Thus,

because Taylor has not demonstrated the presence of multiple errors, the cumulative error doctrine is inapplicable.

{¶46} Taylor's fifth assignment of error is overruled.

III.

{¶47} Taylor's assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.