**[Cite as *State v. Higgins*, 2026-Ohio-1133.]**

STATE OF OHIO         )                IN THE COURT OF APPEALS
                               )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA    )

STATE OF OHIO                             C.A. No.       2025CA0046-M

      Appellee

      v.                                     APPEAL FROM JUDGMENT
                                             ENTERED IN THE
THOMAS HIGGINS                         COURT OF COMMON PLEAS
                                             COUNTY OF MEDINA, OHIO
      Appellant                          CASE No.      2024CR0094

DECISION AND JOURNAL ENTRY

Dated: March 31, 2026

---

SUTTON, Judge.

**{¶1}** Defendant-Appellant, Thomas Higgins, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**Relevant Background Information**

**{¶2}** This matter arises from the death of Z.H., due to a fentanyl overdose. After an investigation, Z.H.'s drug dealer, Mr. Higgins, was charged with one count of corrupting another with drugs, a violation of R.C. 2925.02(A)(3)/(C)(1), a felony of the second degree.

**{¶3}** Mr. Higgins pleaded not guilty by reason of insanity and the trial court ordered competency and sanity evaluations. Upon receiving the results of the competency evaluation, and learning the Psycho Diagnostic Clinic did not perform a sanity evaluation because Mr. Higgins did not agree with the not guilty by reason of insanity plea, the trial court found Mr. Higgins competent to stand trial. Mr. Higgins' plea of not guilty by reason of insanity was withdrawn and a not guilty

plea was entered. Further, after a discussion regarding Mr. Higgins' counsel's motion to withdraw from the case, based upon Mr. Higgins' desire to represent himself at trial, the trial court continued the trial date in order for Mr. Higgins to speak with his counsel about the case.

{¶4} Ultimately, the trial court allowed Mr. Higgins' counsel to withdraw from the case and, subsequent to a colloquy with the trial court, Mr. Higgins signed a waiver of counsel in open court. A jury trial commenced and the State called Officer Kyle Haas, the investigating officer at the crime scene, Dr. Lisa Deranek, the Medina County Coroner, Detective James Allenby, and Taylor Bright, a public safety intelligence analyst who analyzed data from Z.H.'s cell phone. After the State's case-in-chief, Mr. Higgins made a Crim.R. 29 motion which was denied. Mr. Higgins then testified on his own behalf and called S.M., Z.H.'s neighbor and friend who found Z.H. unresponsive, as a defense witness. Mr. Higgins rested his case and renewed his Crim.R. 29 motion, which was again denied. The State then called Detective Allenby as a rebuttal witness.

{¶5} The jury returned a verdict of guilty on corrupting another with drugs, and made a special finding that the controlled substance involved was fentanyl, a Schedule II controlled substance. The trial court sentenced Mr. Higgins to a mandatory indefinite prison term of a minimum of five years and a maximum of seven and a half years.

{¶6} Mr. Higgins now appeals raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN PERMITTING [MR. HIGGINS] TO REPRESENT HIMSELF AND DID NOT COMPLY WITH THE REQUIREMENTS OF *STATE V. MARTIN* REGARDING SELF-REPRESENTATION.**

{¶7} In his first assignment of error, Mr. Higgins argues the trial court erred in permitting him to represent himself at the jury trial. Specifically, Mr. Higgins argues the case had complex

issues, such as cause of death, medical evidence, phone records, and hearsay evidence, and as the trial proceeded, it was clear Mr. Higgins did not know the rules of evidence or procedure.

{¶8} "The Sixth Amendment guarantees a defendant both the right to counsel and 'the right to elect self-representation instead.'" *State v. Yeager*, 2018-Ohio-574, ¶ 6 (9th Dist.), quoting *State v. Tucker*, 2016-Ohio-1353, ¶ 11 (9th Dist.). However, "[a] defendant who wishes to represent himself must knowingly, voluntarily, and intelligently waive his right to counsel." *Yeager* at ¶ 6, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus. As such, "[c]ourts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel." *State v. Trikilis*, 2005-Ohio-4266, ¶ 12 (9th Dist.). Thus, because waiver of counsel may be impactful upon a person's liberties, "the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes [his] right." *Trikilis* at ¶ 12, quoting *State v. Gibson*, 45 Ohio St. 2d 366 (1976) at paragraph two of the syllabus.

{¶9} In *Trikilis* at ¶ 13, this Court explained as follows:

In determining the sufficiency of the trial court's inquiry in the context of a defendant's waiver of counsel, this Court reviews the totality of the circumstances. In verifying that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self [-] representation. While no one factor is dispositive, [this Court] should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, [this Court] may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances. We reaffirm our holding, however, that the trial court's discussion of possible defenses and mitigating circumstances need not be *fact specific*. In order to avoid placing the trial court in the role of an adversary, a broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient. A court may also consider various other factors, including the defendant's age, education, and legal experience.

(Emphasis in original.) (Internal citations omitted.) Therefore, in determining whether the trial court made sufficient inquiry into whether Mr. Higgins knowingly, voluntarily, and intelligently relinquished his right to counsel, this Court must look to the record and review the totality of circumstances. *See also State v. Briggs*, 2021-Ohio-1980, ¶ 8-10 (9th Dist.).

{¶10} Here, the record reveals the trial court spoke with Mr. Higgins on two occasions regarding his request to represent himself at trial. After a pre-trial hearing regarding Mr. Higgins' competency to stand trial and his plea of not guilty by reason of insanity[1], Mr. Higgins' counsel addressed the trial court regarding Mr. Higgins' desire to represent himself and have her act as standby counsel. At that time, Mr. Higgins expressed dissatisfaction with his attorney's performance and his desire for self-representation. The trial court asked Mr. Higgins if he went to law school to which Mr. Higgins responded, "[n]o, but I know--I know- -I know this. I know this case. I want to represent myself." The trial court then told Mr. Higgins that "it's great that you know the case and you know the facts of the case. Do you know the law that applies?" Mr. Higgins responded, "[y]es." The trial court further inquired as to how Mr. Higgins learned the law and Mr. Higgins responded that he "learned it in prison." The trial court then warned Mr. Higgins as follows:

> [THE COURT]: Okay. So you're up against a seasoned prosecutor that's been to law school, that knows the Rules of Evidence, that knows the Rules of Criminal Procedure, and you think you can adequately defend yourself?

Mr. Higgins responded "[y]es[,]" and went on to say he should not ever have been charged in this case. The trial court then asked Mr. Higgins to explain how a grand jury works and Mr. Higgins complied. In so doing, Mr. Higgins showed a cursory understanding of grand jury testimony and

---

[1] Dr. Lynn A. Luna Jones determined to a reasonably degree of psychological certainty that Mr. Higgins was competent to stand trial.

the evidence necessary to indict someone on a crime. The trial court then told Mr. Higgins this case could potentially go to trial and asked him to tell the court about the Rules of Evidence. Mr. Higgins first replied that the State must prove him guilty beyond a reasonable doubt and the trial court told him that's not the Rules of Evidence. The trial court went on to ask Mr. Higgins about cross-examining witnesses, and Mr. Higgins indicated he would question the witnesses and knows how to do so. Mr. Higgins stated, "I will just question them and ask them stuff that would lead to my favor." The trial court responded, "[a]nd you think it's that simple[,]" to which Mr. Higgins responded "[y]es." The trial court responded, "[w]ell it's not." The trial court then denied Mr. Higgins' request to represent himself in order to provide Mr. Higgins the opportunity to confer with his counsel and discuss the case in depth. The trial court explained:

> I'm going to tell you that, you know, as a non-lawyer you are ill-equipped to go up against a seasoned prosecutor that has been to school, that understands the rules, that knows how to cross-examine and attend to witnesses and present evidence. And I understand you have some rudimentary understanding, but before we make this decision I want you to confer with your lawyer.

The trial court instructed Mr. Higgins' counsel to speak with her client and, if he still wished to represent himself, to file a motion with the court to consider.

{¶11} Prior to the commencement of trial, the court addressed pretrial motions filed by Mr. Higgins' counsel, including a motion to withdraw. Mr. Higgins' counsel reiterated that Mr. Higgins did not want her to represent him and he wanted to handle the case pro se. Further, Mr. Higgins' counsel stated she had been working with Mr. Higgins and "he's been very adamant" that he "still wishes to represent himself and does not want an attorney to proceed with him for any trial purposes."

{¶12} The trial court began a lengthy colloquy with Mr. Higgins regarding his desire to represent himself. The trial court told Mr. Higgins he has both a constitutional right to counsel and

to self-representation. The trial court then asked Mr. Higgins to explain why he thinks he is more qualified to represent himself than a lawyer. Mr. Higgins responded, "I just know the case the best and I just feel that I'd be better proving my innocence than an attorney." The trial court inquired if Mr. Higgins ever questioned witnesses, and Mr. Higgins said he had during a misdemeanor trial.

{¶13} The trial court then explained this is a felony trial and the charge is corrupting another with drugs, a felony of the second degree. The trial court asked Mr. Higgins if he intended to take the stand in his own defense and explained that it is Mr. Higgins' choice whether he testifies or not. The trial court also advised Mr. Higgins that he needed "to figure out some way of portraying [himself] on the stand[,]" and that he would be subject to cross-examination by the State. Mr. Higgins responded, "I'm prepared to tell the truth. I know the truth of the case, so I'm ready to appear to be cross-examined and all of that." The trial court asked Mr. Higgins if he had ever done an opening or closing statement, and Mr. Higgins responded no but he "know[s] what it is." The trial court explained there are certain elements the State must prove in this matter and read the indictment to Mr. Higgins which listed the elements of corrupting another with drugs. The trial court further explained Mr. Higgins would have the opportunity to cross-examine the State's witnesses and warned him, "if you don't effectively cross-examine [the State's witnesses], it's going to be potentially detrimental to your situation." The trial court again told Mr. Higgins he has "a very competent attorney sitting next to [him][,]" who has tried quite a few cases in front of the court and "that's something that [Mr. Higgins] really [needs] to take into consideration."

{¶14} Additionally, the trial court told Mr. Higgins if the jury were to find him guilty, he would be facing a mandatory period of incarceration, from two to eight years, and that if the court sentenced him to two years, he could serve an additional year under Reagan Tokes based upon his conduct in prison. The trial court stated:

[a] two-year sentence becomes a two-to-three-year sentence, or a four-year sentence becomes a four-to-six-year sentence, and so forth. So you have to understand that [] you have significant liberty interests at stake here[,] . . . [a]nd if you are not effective in being your own attorney, you [] could face prison time, significant prison time.

The trial court also explained Mr. Higgins could face a fine up to $15,000, and would be subject to post-release control, which, if Mr. Higgins committed another offense during that period-of-time, Mr. Higgins could face even more time in prison. Mr. Higgins responded affirmatively that he understood what the trial court explained to him, and he was "prepared for trial."

{¶15} The trial court asked Mr. Higgins "what defenses do you think you have[,] and Mr. Higgins responded:

All of the evidence. . . that the lawyers shared with me, the evidence, it leads towards two witnesses as actually being the person behind the crime . . .[T]here's no evidence that puts me there after he died. I don't even know when he died . . . [I]t's like none of the evidence proves that I did this. The evidence proves that the witnesses who gave the statements had something to do with it.

After allowing Mr. Higgins to further explain his possible defenses, the trial court cautioned: "think about your defense and how the defense is going to be presented . . . there are Rules of Evidence. . . . [A]re you familiar with the Rules of Evidence?" Mr. Higgins responded, "[y]es." The trial court went on to ask Mr. Higgins if he is familiar with the Rules of Criminal Procedure and specifically Crim.R. 29. Mr. Higgins again responded affirmatively and indicated he could ask his standby counsel any questions regarding motions. Mr. Higgins stated, "I'm capable of proving my innocence better than any attorney could because I was there and I know everything that happened and I know I'm innocent." The trial court asked Mr. Higgins about any mitigating factors that might lessen the punishment in this case and Mr. Higgins responded his counsel told him the State was not interested in a plea with probation, so he "would rather go to trial than jail time since [he is] innocent."

{¶16}   At that time, the trial court granted Mr. Higgins' attorney's motion to withdraw and Mr. Higgins signed a Waiver of Counsel form, in open court, that stated, "I, Thomas Higgins, Defendant in the above cause, having been advised by the court of the nature of the charge against me, and of my rights under the Constitution, hereby waive, in writing, and in open court, my right to be represented by counsel."

{¶17}   Based upon this record, and the totality of the circumstances, the trial court made sufficient inquiry into whether Mr. Higgins knowingly, voluntarily, and intelligently relinquished his right to counsel.  The record shows that the trial court advised Mr. Higgins of the dangers and disadvantages of self-representation, advised Mr. Higgins of the nature of the charge and the range of allowable punishments, and the trial court discussed possible defenses to the charges and applicable mitigating circumstances.  The trial court also spoke at length with Mr. Higgins regarding the rules of criminal procedure and evidence, and walked him through each stage of the trial.

{¶18}   Indeed, the trial court repeatedly warned Mr. Higgins that he would be facing a seasoned prosecutor who went to law school and knew the rules of evidence and procedure, and Mr. Higgins could be quite disadvantaged in that regard.  In spite of the trial court's repeated warnings, Mr. Higgins continually indicated he was prepared for trial and knew the case better than anyone, including his own attorney.

{¶19}   Further, regarding Mr. Higgins' argument that his unpreparedness to represent himself was "apparent during trial,"  we turn to *Faretta v. California*, 422 U.S. 806 (1975).  In *Faretta*, the Supreme Court of the United States explained:

> The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the 'ground

rules' of trial procedure. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. *For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.*

(Emphasis added.) *Faretta* at 835-836.

**{¶20}** Accordingly, Mr. Higgins' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**[MR. HIGGINS'] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶21}** In his second assignment of error, Mr. Higgins argues his conviction for corrupting another with drugs is against the manifest weight of the evidence. Specifically, Mr. Higgins argues the State, in bearing the burden of proof at trial, failed to establish beyond a reasonable doubt that Mr. Higgins "furnished fentanyl" to the decedent, Z.H. Mr. Higgins admits to selling Z.H. methamphetamine, but not fentanyl.

**{¶22}** As to manifest weight of the evidence, this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶23} An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶24} To the extent Mr. Higgins argues the State presented no evidence that he sold or gave fentanyl to Z.H., in support of his conviction for corrupting another with drugs, Mr. Higgins' argument sounds in sufficiency rather than weight. *See State v. Yatson*, 2022-Ohio-2621, ¶ 69 (9th Dist.). Sufficiency tests the State's burden of production while manifest weight tests its burden of persuasion. *See State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.). Thus, manifest weight challenges concern the reliability or believability of the State's evidence, not its adequacy. *Yatson,* at ¶ 69. *See State v. Vincente-Colon*, 2010-Ohio-6242, ¶ 20 ("[S]ufficiency and manifest weight are two separate, legally distinct arguments.") (9th Dist.).

{¶25} Further, to the extent Mr. Higgins argues he consistently admitted to Detective Allenby, and testified at trial, that he sold methamphetamine to Z.H., but he did not sell fentanyl, the jury heard this testimony as well as the cross-examination of Mr. Higgins wherein Mr. Higgins admitted he did not test the drugs he sold Z.H. for fentanyl. The jury also heard Mr. Higgins' testimony regarding alleged issues with the police investigation in this matter, as well as Detective Allenby's testimony regarding how the police determined which drugs in Z.H.'s house to test and how the police determined, through cell phone analytics, Mr. Higgins was the prime suspect in this matter. As indicated above, "[t]his Court will not overturn a conviction on a manifest weight

challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Gannon*, 2020-Ohio-3075, at ¶ 20.

**{¶26}** Based upon our review of this record, the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**{¶27}** Accordingly, Mr. Higgins' second assignment of error is overruled.

III.

**{¶28}** Mr. Higgins' first and second assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                        _____

                        BETTY SUTTON
                        FOR THE COURT

HENSAL, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

MICHAEL J. GOEBL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.