**[Cite as *State v. Boykins*, 2026-Ohio-1936.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      31414 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY BOYKINS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR-2024-05-1625 |

## DECISION AND JOURNAL ENTRY

Dated: March 27, 2026

SUTTON, Judge.

{¶1}   Defendant-Appellant, Anthony Boykins, appeals from the judgment of the Summit County Court of Common Pleas.  For the following reasons, this Court affirms, in part, and reverses, in part.

### I.

### **Relevant Background**

{¶2}   After a home invasion wherein Mr. Boykins possessed a firearm, Mr. Boykins was indicted on one count of aggravated burglary, in violation of R.C. 2911.11(A)(1)/R.C. 2911.11(A)(2)/(B), a felony of the first degree.  Mr. Boykins was also indicted, pursuant to R.C. 2941.145(A), on a 3-year firearm specification to count one.  Mr. Boykins pleaded not guilty and the matter proceeded to jury trial.  The jury found Mr. Boykins guilty on aggravated burglary and the firearm specification.  On the count for aggravated burglary, the trial court sentenced Mr. Boykins to an indefinite term of imprisonment for a minimum of 4 years and a maximum of 6

years, and a mandatory period of postrelease control for a mandatory period up to 5 years, but no less than 2 years. On the firearm specification, the trial court sentenced Mr. Boykins to a 3-year mandatory term of imprisonment to be served first and consecutive to the indefinite prison term for aggravated burglary.

{¶3} Mr. Boykins now appeals raising five assignments of error for our review. To better facilitate our analysis, we group certain assignments of error and discuss them out of order.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND [MR. BOYKINS] GUILTY OF AGGRAVATED BURGLARY ALONG WITH ITS FIREARM SPECIFICATION BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.**

{¶4} In his first assignment of error, Mr. Boykins argues his conviction for aggravated burglary is not supported by sufficient evidence. Specifically, Mr. Boykins challenges the sufficiency of the evidence as to whether the State proved the existence of a deadly weapon.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶6} R.C. 2911.11(A)(2) states, in relevant part:

No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

"R.C. 2911.11(C)(2) provides that a 'deadly weapon' has the same meaning as provided in R.C. 2923.11, which defines a 'deadly weapon' as 'any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.'" *State v. Taylor*, 2011-Ohio-5009, ¶ 10 (9th Dist.), quoting R.C. 2923.11(A). Further, pursuant to R.C. 2923.11:

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, *the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.*

(Emphasis added.) *See Thompkins*, 78 Ohio St.3d at 384 ("[I]t should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable."). Indeed, "[a] firearm constitutes a deadly weapon." *State v. Carter*, 2024-Ohio-5295, ¶ 8 (9th Dist.), citing R.C. 2903.11(E)(1); R.C. 2923.11(A); R.C. 2923.11(B).

{¶7} Here, E.H. testified she was at home with her two children, and her tenant G.M., when an individual entered her house through the front door and pointed a firearm at her. The

individual wore a black ski mask that covered his face, black shorts, and a white T-shirt. E.H. testified the individual, "brandished the firearm and pointed it at my stomach." After the individual left her home, E.H. called 911. E.H. testified when the individual went outside, she heard gunshots.

{¶8} G.M. testified he was sitting on the front porch at E.H.'s house when he saw an individual with a firearm coming toward the house. G.M. indicated the individual went inside E.H.'s house and pointed the firearm at E.H. Further, G.M. described the firearm as "black" and "semi-automatic." G.M. also testified the individual was wearing a black ski mask, black shorts, and a white T-shirt. When G.M. was closing the door to E.H.'s house, he heard one gunshot.

{¶9} L.M. watched from outside E.H.'s house as a masked individual with a firearm entered the house through the front door. L.M. testified the individual pointed the firearm at the front door, entered the house, came outside again, put a magazine in the firearm, and went back inside the house. L.M. also testified the individual removed his mask while standing outside E.H.'s house. L.M. identified the individual as Mr. Boykins.

{¶10} Further, because the record contains direct evidence of a deadly weapon, we need not consider Mr. Boykins' argument regarding statutory interpretation relating to whether circumstantial evidence can be used to determine if something constitutes a "deadly weapon." As indicated above, a firearm is *defined* as a "deadly weapon" and the testimony of E.H., G.M., and L.M. indicate Mr. Boykins possessed a firearm when he entered E.H.'s home. E.H. and G.M. both testified Mr. Boykins pointed the firearm at E.H., and G.M. also testified he heard one gunshot as he was closing E.H.'s front door. L.M. also witnessed Mr. Boykins insert a magazine into the firearm while standing outside E.H.'s house. As such, there is direct evidence that Mr. Boykins possessed a deadly weapon, a firearm, during the burglary, and circumstantial evidence that the

firearm was operable. *See Thompkins,* 78 Ohio St. 3d at 384; *see also* R.C. 2903.11(E)(1); R.C. 2923.11(A); R.C. 2923.11(B).

**{¶11}** In viewing this evidence in a light most favorable to the State, the trier of fact could reasonably conclude beyond a reasonable doubt that Mr. Boykins possessed a deadly weapon, in this case a firearm, during the burglary at E.H.'s home, and committed the crime of aggravated burglary.

**{¶12}** Accordingly, Mr. Boykins' first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**[MR. BOYKINS'] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION.**

**{¶13}** In his second assignment of error, Mr. Boykins argues his conviction for aggravated burglary was against the manifest weight of the evidence. Specifically, Mr. Boykins again focuses his argument on whether the State proved he possessed a deadly weapon during the burglary at E.H.'s house.

**{¶14}** As this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶15}  Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶16}  Here, to the extent Mr. Boykins argues the State presented no evidence that he "at any time possessed or had on his person or under his control a deadly weapon[,]" Mr. Boykins' argument sounds in sufficiency rather than weight. *See State v. Higgins*, 2026-Ohio-1133, ¶ 24 (9th Dist.); *see also State v. Yatson*, 2022-Ohio-2621, ¶ 69 (9th Dist.). Sufficiency tests the State's burden of production while manifest weight tests its burden of persuasion. *See State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.). Thus, manifest weight challenges concern the reliability or believability of the State's evidence, not its adequacy. *Yatson* at ¶ 69; *see State v. Vincente-Colon*, 2010-Ohio-6242, ¶ 20 (9th Dist.) ("[S]ufficiency and manifest weight are two separate, legally distinct arguments.").

{¶17}  Further, to the extent Mr. Boykins argues the persuasiveness of the State's evidence that he possessed a deadly weapon, the jury heard the testimony of E.H., G.M., and L.M. who saw Mr. Boykins with a firearm during the burglary at E.H.'s house.  Additionally, E.H. and G.M. both testified they saw Mr. Boykins point the firearm at E.H., and G.M. testified he heard a gunshot after Mr. Boykins left E.H's house.  As indicated above, "[t]his Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Gannon*, 2020-Ohio-3075, at ¶ 20.

{¶18}  Accordingly, Mr. Boykins' second assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FAILING TO PROPERLY IMPOSE JAIL-TIME CREDIT AT HIS SENTENCING HEARING.**

{¶19}  In his fourth assignment of error, Mr. Boykins argues the trial court erred in failing to impose jail-time credit at the sentencing hearing.  Mr. Boykins did not object to this alleged error at the sentencing hearing and has forfeited all but plain error.

{¶20}  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The plain error doctrine requires there to be: (1) a deviation from a legal rule; (2) that is an obvious defect in the trial; and (3) that affects the appellant's substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the third element, an appellant must show that the error affected the outcome of his trial. *Id*. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21}  R.C. 2929.19(B)(2) states, "[s]ubject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

. . .

(g)(i) Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term or, if the offense is an offense for which a non-life felony indefinite prison term is imposed under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, the minimum and maximum prison terms imposed on the offender as part of that non-life felony indefinite prison term, under section 2967.191 of the Revised Code. The court's calculation shall not include the number

of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

(ii) In making a determination under division (B)(2)(g)(i) of this section, the court shall consider the arguments of the parties and conduct a hearing if one is requested.

(iii) The sentencing court retains continuing jurisdiction to correct any error not previously raised at sentencing in making a determination under division (B)(2)(g)(i) of this section. The offender may, at any time after sentencing, file a motion in the sentencing court to correct any error made in making a determination under division (B)(2)(g)(i) of this section, and the court may in its discretion grant or deny that motion. If the court changes the number of days in its determination or redetermination, the court shall cause the entry granting that change to be delivered to the department of rehabilitation and correction without delay. Sections 2931.15 and 2953.21 of the Revised Code do not apply to a motion made under this section.

(iv) An inaccurate determination under division (B)(2)(g)(i) of this section is not grounds for setting aside the offender's conviction or sentence and does not otherwise render the sentence void or voidable.

{¶22}  Here, the record indicates the trial court granted Mr. Boykins 12 days of jail-time credit in its journal entry.  Importantly, Mr. Boykins does not argue that he requested a hearing or that the trial court's calculation of jail-time credit is incorrect.  Thus, Mr. Boykins has not persuaded this Court, pursuant to Crim.R. 52(B), that these are exceptional circumstances where this Court must notice plain error to prevent a manifest miscarriage of justice.  *See Long*, 53 Ohio St.2d at paragraph three of the syllabus.

{¶23}  Accordingly, Mr. Boykins' fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT SENTENCED [MR. BOYKINS] WITHOUT PROPERLY GIVING HIM ALL THE REQUIRED NOTIFICATIONS CONCERNING POST[]RELEASE CONTROL.**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FAILING TO PROPERLY ADVISE [MR. BOYKINS] OF ALL THE**

**REQUIREMENTS OF THE REAGAN TOKES LAW AT HIS SENTENCING HEARING.**

{¶24} In his third assignment of error, Mr. Boykins argues the trial court erred when it sentenced him without advising him of the potential consequences of violating post[-]release control as set forth in R.C. 2967.28(F)(3). Specifically, Mr. Boykins argues the trial court incorrectly stated that if he violated the terms of post[-]release control, the parole board could add back four and a half years of incarceration, or as much as five additional years. In his fifth assignment of error, Mr. Boykins argues, pursuant to R.C. 2929.19(B)(2)(c), the trial court erred by failing to advise him of the required notifications under Reagan Tokes. The State, in its brief, conceded these alleged errors.

{¶25} "At its core, post[-]release control is a sanction; it is an additional term of supervision after an offender's release from prison that imposes certain restrictions on the offender and, if violated, it allows the [Adult Parole Authority] to impose conditions and consequences, including prison time, on the offender." *State v. Bates*, 2022-Ohio-475, ¶ 21. "The trial court must advise the offender at the sentencing hearing of the term of supervision, whether post[-]release control is discretionary or mandatory, and the consequences of violating post[-]release control." *Id*. at ¶ 11. "Among other consequences, an offender's violation of a post[-]release control sanction or condition may result in the [Adult Parole Authority] imposing a prison term on the offender." *Id*. citing R.C. 2967.28(F)(3). "However, the maximum cumulative prison term for all violations under R.C. 2967.28(F)(3) 'shall not exceed one-half' of the stated prison term originally imposed." *Id*. quoting R.C. 2967.28(F)(3). Therefore, "at the sentencing hearing, the court must notify the offender that if he or she 'violates [post-release control]. . . , the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed

upon the offender.'" *State v. Holbert*, 2024-Ohio-175, ¶ 10 (2d Dist.), quoting *State v. Grimes*, 2017-Ohio-2927, ¶ 9, *overruled on other grounds by State v. Bates*, 2022-Ohio-475.

**{¶26}** Here, the record indicates the trial court did not properly inform Mr. Boykins at the sentencing hearing of the potential consequences of violating post-release control as set forth in R.C. 2967.28(F)(3). *See Holbert* at ¶ 10. As such, we must remand for the trial court to properly advise Mr. Boykins of the potential consequences of violating post-release control in accordance with R.C. 2967.28(F)(3).

**{¶27}** Further, the record indicates, pursuant to R.C. 2929.19(B)(2)(c), the trial court did not advise Mr. Boykins of the required notifications under Reagan Tokes, which state:

> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;
>
> (ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;
>
> (iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;
>
> (iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;
>
> (v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

*See State v. Pope*, 2022-Ohio-426, ¶ 23 (12th Dist.) ("[T]his matter is remanded for the sole purpose of providing Pope with the required notifications as set forth in R.C. 2929.19(B)(2)(c). However, we emphasize that our reversal and remand are only for the purpose of complying with the foregoing statute and in no way affect the validity of the underlying conviction or any other aspect of the sentence imposed by the trial court. In other words, Pope is not entitled to be sentenced anew and the matter is remanded to the trial court for the sole and limited purpose of providing the mandatory notifications of R.C. 2929.19(B)(2)(c).").

{¶28} Accordingly, Mr. Boykins' third and fifth assignments of error are sustained. This matter is remanded for the trial court to properly advise Mr. Boykins, pursuant to R.C. 2967.28(F)(3) and R.C. 2929.19(B)(2)(c), of the requirements stated above. However, our reversal and remand in no way affect the validity of the underlying conviction or any other aspect of the sentence imposed by the trial court.

III.

{¶29} Mr. Boykins' first, second, and fourth assignments of error are overruled. Mr. Boykins' third and fifth assignments of error are sustained for the sole purpose of properly advising Mr. Boykins of the required notifications in accordance with R.C. 2967.28(F)(3) and R.C. 2929.19(B)(2)(c). The judgment of the Summit County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

BETTY SUTTON
FOR THE COURT


CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

NEIL AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.